[No. 18554.  Department Two.  May 19, 1925.]

WASHINGTON STATE REALTY COMPANY, *Respondent,* v. PAUL SAAD *et al., Appellants.*[1]

REFORMATION OF INSTRUMENTS (20)—MUTUAL MISTAKE—EVIDENCE —SUFFICIENCY.  There was no mutual mistake warranting the reformation of a contract for the sale of property so as to include a party wall agreement, claimed to have been omitted by mistake, where, although the grantors intended to convey the land subject to a party wall agreement, the grantees had no actual knowledge of unusual provisions therein giving the grantor the right to encroach for other purposes upon the land purchased, and would not have purchased the property if they had known thereof (MACKINTOSH, J., dissenting).

Appeal from a judgment of the superior court for Spokane county, Charles P. Lund, judge *pro tempore,* entered October 18, 1923, in favor of the plaintiff, in an action to reform a contract, tried to the court.  Reversed.

*Allen, Winston & Allen,* for appellants.

*Post, Russell & Higgins,* for respondent.

[1]Reported in 236 Pac. 85.

FULLERTON, J.—On July 5, 1905, the respondent, Washington State Realty Company, acquired by purchase from Charles M. Fassett and wife, the east half of the south 67 feet of lot 10, in block 12, as the same is known and designated on a recorded plat of the city of Spokane. The lot was improved with a two-story brick building having a basement, and was subject to a party-wall agreement respecting the west wall of the building, entered into between certain prior owners of the property. Fassett and wife then owned property in the same block lying to the north and abutting on the property conveyed, upon which they were contemplating erecting a three-story building. In view of this situation, the parties to the conveyance, by an instrument bearing the same date, entered into a party-wall agreement respecting the north wall of the building. This agreement contained, among others, the following conditions:

"1. Said party of the first part [the respondent in this action] hereby grants to the second parties [the Fassetts] the right, privilege and authority to use the said north wall upon the premises and property above described to support any building or buildings that the second parties may hereafter erect or construct upon the following described property, to-wit: the N. 75.47 feet of the E. ½ of said lot 10 in the same manner and to the same extent as if said wall had been built as a party wall and ½ thereof on each of the tracts hereinbefore described, together with the right to add to and extend the height of said wall to such extent as the building ordinances of the city of Spokane and the laws of the State of Washington will permit. . . .

"3. It is further agreed that in the event either of the parties hereto shall desire to extend said wall above three stories in height, such extension may be made by reinforcing or adding to the thickness of said wall on the property of the first party so that the same may be extended to a height of not to exceed 6 stories, . . .

"7. It is further agreed that the covenants herein contained are not personal covenants, but are covenants running with the land and binding upon the heirs, representatives, successors and assigns of the respective parties and owners of the respective parcels of land to be benefited hereby, . . .

"9. It is further agreed that the second parties, their successors and assigns shall have and are given and granted the perpetual right and easement and privilege of using and connecting with the gas, water and sewer pipes and mains in the basement of the building now on the property hereinbefore first described. . . . Said second parties shall maintain their said gas, water and sewer pipe and connections in good order and good condition and shall have access thereto at reasonable times for that purpose."

Each of the party-wall agreements was formally executed, and was put of record in due time after its execution.

Sometime after acquiring the property the respondent leased it to the appellants Saad. The appellants continued in possession of the property for a number of years, when they were approached by a real estate broker who solicited them to purchase a business property in another part of the city. The appellants informed the broker that they did not desire the property offered them, but would consider purchasing the property they were occupying. The broker then called to his aid another broker, and negotiations were begun by the parties, through the brokers, looking to a purchase by the appellants of the property in question. These negotiations continued for some time; the controversy being over the purchase price. Finally, they culminated in an agreement of purchase and sale at a consideration of $80,000. At this time the appellants made a deposit with the brokers, who receipted therefor as the agents of the owner, stating in the receipt the general terms of the agreement of purchase. The

respondent then caused an abstract of the title to the property to be prepared and delivered to the appellants. The abstract was submitted by the appellants to their attorney, who, by letter addressed to the appellants, reported that he found the title to the property vested in the respondent, free and clear of all incumbrances except certain unpaid taxes and a lien in a small sum for a street improvement. The letter concluded with this statement:

"The property is subject to the two party wall agreements, one made with the owner of the property immediately west of the property described herein and the other made with the owner of the property immediately north of the property mentioned herein."

The parties thereupon entered into a formal writing, stating the terms and conditions of the agreement of purchase and sale in the following language:

"Articles of agreement made this 23 day of June A. D. 1921, between Washington State Realty Company, a corporation organized and existing under and by virtue of the laws of the state of Washington, of Spokane, county of Spokane, state of Washington, party of the first part, and Paul Saad and Ethel Saad, his wife, and John Saad, a bachelor, of Spokane, county of Spokane, state of Washington, parties of the second part.

"Witnesseth, That if the parties of the second part shall first make the payment and perform the covenants hereinafter mentioned, on their part to be made and performed, the said party of the first part does hereby covenant and agree to convey and assure to the said parties of the second part, in fee simple, clear of all incumbrances whatever, and subject to present leases to Saad Brothers and Roy A. Hathaway, both leases expiring April 30, 1923, by a good and sufficient Warranty Deed, the lot, piece or parcel of land situate in the county of Spokane and state of Washington known and described as follows, to-wit:

"East half of the south sixty seven (67) feet of lot ten (10) block 12 Resurvey and Addition to Spokane Falls, now Spokane, Washington (being about twenty eight feet by sixty seven feet at the northwest corner of Wall Street and Main Avenue). An undivided one-half interest in said property to be vested in Paul Saad and Ethel Saad, his wife, and an undivided one-half interest to be vested in John Saad, a bachelor.

"And the said parties of the second part, in consideration of the foregoing premises, hereby covenant and agree to pay to said party of the first part the sum of Eighty Thousand Dollars, in the manner following: $30,000 cash, $25,000 July 1, 1922, and $25,000 July 1, 1923 (it is understood that parties of the second part may pay the remaining principal—$5000 or more on the payment due July 1, 1922, after January 1, 1922, and $5000 or more on the remaining payment after January 1, 1923, with interest due to date of payment) with interest from July 1, 1921, at the rate of six per centum per annum, payable semi-annually, on the whole sum remaining from time to time unpaid; and to pay all taxes, assessments or impositions that may be legally levied or imposed upon said land subsequent to the year 1920. And in case of the failure of the said parties of the second part to make either of the payments, or any part thereof, or to perform any of the covenants on their part hereby made and entered into, this contract shall, at the option of the parties of the first part, be forfeited and determined, and the parties of the second part shall forfeit all payments made by them on this contract, and said payments shall be retained by the said parties of the first part in full satisfaction and liquidation of all damages by them sustained, and they shall have the right to re-enter and take possession of the premises aforesaid. Parties of the second part agree to carry fire insurance in a responsible company subrogated to the party of the first part to the extent of $7500.

"It is mutually agreed by and between the parties hereto that the time of payment shall be the essence of this contract, and that all covenants and agreements herein contained shall extend to and be obligatory upon

the heirs, executors, administrators and assigns of the respective parties.''

The appellants made the initial and intermediate payments required by the agreement and were ready to make the final payment and receive a deed, when a controversy arose between them and the respondent over the provisions of the party-wall agreement relating to the north wall. The appellants insisted that the respondent either cause its terms to be modified so as to eliminate that part of it which gave to the owner of the abutting property the right to enlarge the wall by extending it further upon the property they had contracted to purchase, and eliminate the provision relating to the gas and water pipes, or, in the alternative, execute to them a deed in accordance with the formal written contract. The respondent declined to comply with either of these requests, and thereupon instituted the present action to reform the contract. It averred in its complaint that it was the understanding and agreement of the parties that the appellants were to take the property subject to the party-wall agreements, and that it was by the mutual mistake of the parties that a clause to that effect was not inserted in the contract. The appellants took issue on the allegations of the complaint in this particular, and a trial was had, resulting in a finding by the trial court that the omission was by the mutual mistake of the parties, and in a decree reforming the contract.

The evidence disclosed that the draft of the contract was prepared by an officer of the respondent, and was modified at the suggestion of the appellants before execution only in an immaterial particular—the provision reciting the names of the grantees to be inserted in the final deed. The officers of the respondent, who had a part in the negotiations leading up to the contract, testified that it was the purpose and intent of

the respondent to sell the property subject to the party-wall agreements, and the officer who prepared the draft testified that the clause to that effect was omitted from the contract because he overlooked it for the time being. The appellants, on the other hand, admit that they had knowledge that there were party-wall agreements affecting the property, and very frankly say that they have no objection to the agreement affecting the west wall of the building, and would not object to the other had it been in form the usual agreement in such cases. Indeed, one of them testified that he thought such agreements beneficial as they "saved land." But we find no evidence that the agreements were ever a subject of discussion between the parties in the negotiations leading up to the execution of the contract of sale, and no evidence that the somewhat unusual provisions of the agreement relating to the north wall were ever brought directly to the attention of the appellants prior to the execution of the contract. On the contrary, the evidence is that they learned of these provisions after they had become ready to make the final payment. At that time they submitted the abstract for examination to an attorney other than the one they had at first employed, and it was he who called their special attention to the provisions.

In the light of the evidence, we cannot follow the learned trial judge in his conclusion that the contract was the result of a mutual mistake. Contrary to the inference which might be drawn from his findings and judgment, there is no room to question the good faith of either of the parties. There is no doubt that the officers of the respondent intended to convey the land subject to the party-wall agreements; and, doubtless, but for the fact that it was overlooked, the intention would have been noted in the written contract. But it is clear that the appellants had no actual knowledge

that, by the terms of one of the agreements, the adjoining proprietor had the right to encroach on the property they contracted to purchase for his own purposes, or had the perpetual right to connect with the water and gas mains therein, and the perpetual right of visitation thereon for the purpose of making the connections and of keeping them in repair. And it is equally clear that, had the appellants been made aware of these rights at any time during the negotiations, they would not have entered into the contract had it been originally written as it is now after its reformation by the trial court. It would seem, therefore, that so far from there being a mutual mistake in the contract as writtten, it is an instance where the minds of the parties did not meet upon the terms of the contract.

It may be that the appellants, in their ignorance of the actual nature of the party-wall agreement, intended to take the property subject thereto, and it may be that, in their then state of mind, they would have executed the contract had it been expressed therein that the purchase was to be subject to the agreements. But the fact remains that they have never as yet contracted with the respondent so to do, and to change the contract they did enter into on this ground is not to reform the contract, but is to make a new contract for them.

We do not think we need review the many cases cited in support of the conclusions of the trial court. That the principles of law they announce are well founded will be conceded. But we do not find that the facts in any of them parallel the facts of the present case. For illustration, we may refer to the case of *Fischer v. Dent,* 259 Mo. 86, as counsel say it is cited because of the similarity of its facts to the facts of the present case. That was a conveyance of property on which there was a building. It was referred to in the nego-

tiations as "the little store;" no specific description
of the property being therein referred to. In the deed
the property was conveyed by metes and bounds, and
there was included therein a greater area than the
building occupied, thus trenching upon property the
grantor had conveyed to another. The court held that
there should be a reformation of the deed, using this
language:

"There can be no doubt as to the intention of both
parties to the sale and transfer of the land in ques-
tion from Mrs. Fischer to Hobson and Seay. What-
ever might have been their idea as to the proper de-
scription to be employed to express it, there is no
question as to the thing which was the subject of the
transaction. They purchased the little store and the
ground on which it was situated, the width of which
was as perfectly marked by the width of the ware-
house on Third street as by the width of the store on
Fourth street. They took possession of that property,
never suspecting that they were not then in possession
of everything they had purchased. A tenant was in
possession of the opera house building and no com-
plaint was made by the purchasers of this property
that he was not within his right in the occupation of
every square foot of that building. The unquestioned
possession of the respective parties measured the
claim of each, and was for that reason evidence of
their intention in the transaction which was the origin
of that claim."

The distinction between the cases seems to us to be
plain. There, the parties obtained by the deed a
greater area of land than they contracted or intended
to purchase or the grantor contracted or intended to
sell. Here, the party-wall agreements were never the
subject of negotiation, and no contract was ever en-
tered into concerning them. A reformation of the con-
tract in one case cannot, therefore, be a precedent for
a reformation in the other.

The decree will be reversed, and the cause remanded with instructions to enter a decree to the effect that the plaintiff below take nothing by its suit.

MITCHELL, MAIN, and HOLCOMB, JJ., concur.

MACKINTOSH, J., dissents.